# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ANGELA M. CRAWFORD,<br>      Plaintiff,<br><br>      v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>      Defendant. | )<br>)<br>)<br>)   Cause No.: 2:16-CV-50-PRC<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Angela M. Crawford on February 9, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14], filed on June 15, 2016. The Commissioner filed a response on September 20, 2016, and Plaintiff filed a reply on October 5, 2016.

## BACKGROUND

Plaintiff first filed for supplemental security income on June 22, 2012. Her claim was denied initially and on reconsideration. Plaintiff then asked for a hearing before one of the Agency's administrative law judges (ALJs), which took place on August 7, 2014, before ALJ Mario G. Silva. The ALJ held a supplemental video hearing on September 5, 2014. Plaintiff's main representative was attorney Thomas J. Scully, but she was represented by Scully's associate Veda P. Dasari at the hearings.

The ALJ issued a written decision on September 11, 2014, concluding that Plaintiff was not disabled based on the following findings.

    1.    The claimant has not engaged in substantial gainful activity since June 22, 2012, the application date.

2. The claimant has the following severe impairments: status post fracture of the pelvis, right ankle, and coccyx, degenerative joint disease of the right hip, degenerative disc disease of the lumbar spine, and depression.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than sedentary work as defined in 20 CFR 416.967(a). Specifically, the claimant can frequently lift up to twenty pounds, frequently carry ten pounds, and occasionally carry twenty [pounds]. The claimant is able to sit, stand, or walk for one hour [at a] time. The claimant is able to sit for six hours, stand for one hour, and walk for one hour in [an] eight-hour workday. The claimant is able to reach in all directions, including overhead, as well [as] handle and finger on a frequent basis bilaterally. The claimant can occasionally push and pull. The claimant can never operate foot controls with her right foot but can occasionally operate foot control[s] with her left foot. The claimant never [sic] climb ladders, ramps, or scaffolds and never crawl, but can occasionally climb ramps and stairs as well as balance, stoop, kneel or crouch. The claimant must avoid all exposure to unprotected height to unprotected heights [sic] and dangerous moving machinery. The claimant is limited to occasional exposure to fumes and pulmonary irritants. The claimant is limited to no more than occasional exposure to heat or cold. The claimant must avoid all exposure to vibrations. The claimant is limited to occasional exposure to wetness and humidity. The claimant is limited to unskilled work and is able to understand or remember simple instructions and make judgment on simple work related decisions and is able to interact appropriately with coworkers and supervisors on routine work stetting [sic]. The claimant is able to respond to usual situations and to changes in routine work setting. The claimant must be allowed to work at a flexible pace, free of fast paced production requirements. The claimant's work must not require tandem tasks or teamwork, where one production step is dependent upon a prior step.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born [in 1966] and was 45 years old, which is defined as a younger individual age 18-44, on the date the application was filed [sic]. The claimant subsequently changed age category to a younger individual age 45-49.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabiled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 22, 2012, the date the application was filed.

(AR 46-55). Plaintiff then sought review before the Agency's Appeals Council, which denied her request on December 16, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On February 9, 2016, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*

*v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual

5

functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff contends that the ALJ erred in assigning weight to agency examining expert Dr. Smejkal, in evaluating Plaintiff's subjective symptoms, and in determining Plaintiff's mental and physical RFC. The Court will address each argument in turn.

**A. Weight to Dr. Smejkal's Opinions**

An ALJ is required to evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. § 416.927(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id*. § 416.927(c)(1)-(6).

"[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Further,

"[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself suffice." *Gudgel*, 345 F.3d at 470.

In assigning the opinion of Dr. Smejkal "some weight," the ALJ gave two reasons: (1) "portions of his opinion are grossly inconsistent with the record" and (2) "there are numerous discrepancies between the two examinations Dr. Smejkal performed."

The "gross inconsistencies" are not named in full, but the ALJ provides one example. The ALJ reports that Dr. Smejkal opined that Plaintiff can never balance, stoop, kneel, or crouch. To show that this is inconsistent with the record, the ALJ points to Dr. Brahms, who testified that these limitations are not consistent with the record. Though Dr. Brahms testified that Plaintiff could occasionally balance, stoop, kneel, and crouch, (AR 75), the ALJ later found that Dr. Brahms "somewhat overstates the claimant's abilities," (AR 53). The ALJ did not identify any specific medical evidence that he finds inconsistent with Dr. Smejkal's opinion. Thus, the ALJ's statement that Dr. Smejkal's opinion is "grossly inconsistent" with the record is not properly supported. For example, no reason, other than testimony by non-examining physician Dr. Brahms, is provided for not accepting Dr. Smejkal's opinion that Plaintiff must be able to have constant interruptions in sitting, standing, and walking. The ALJ has not provided a logical bridge from the evidence to his conclusion that the entire opinion is entitled to only some weight.

Further, the ALJ finds "discrepancies" between Dr. Smejkal's two examinations of Plaintiff. The later examination, performed in August 2014, suggested more severe limitations than the earlier examination, performed in August 2012. Two of the severe impairments that the ALJ found Plaintiff to have are degenerative conditions: degenerative joint disease of the right hip and degenerative disc

7

disease of the lumbar spine. Degenerative diseases, by nature, grow worse over time, so a decrease in ability over two years is not unexpected. *See Roddy*, 705 F.3d at 637 ("The term 'degenerative' implies that [the plaintiff] suffers from a condition that will get worse over time . . . ; it is not one that will remain stable or improve."); *see also Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014) (finding the ALJ used "faulty logic" in interpreting evidence as inconsistent without considering that the differences in the evidence may be due to the progressive nature of the claimant's disease).

The ALJ stated that Dr. Smejkal examined the Plaintiff, which is a factor in favor of giving the opinion more weight than to a non-examining physician, such as Dr. Brahms. *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Further, Dr. Smejkal, as an agency physician, is unlikely to exaggerate Plaintiff's impairments and limitations. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

In light of these factors weighing in favor of giving more weight to Dr. Smejkal's opinion and because of the issues with the ALJ's stated reasons for giving less weight to the opinion, this matter must be remanded for a new assignment of weight to Dr. Smejkal's opinion.

### B. Subjective Symptom Evaluation

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

8

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

See 20 C.F.R. § 416.929(c)(3). An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support his evaluation with specific reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Last year, the Social Security Administration issued Social Security Ruling ("SSR") 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Though the new Ruling was issued after the ALJ's decision in this matter, the new Ruling is a clarification of the law and not a change in the law, so use of the new Ruling on appeal is appropriate. *See Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (using 16-3p).

Plaintiff argues that the ALJ erred in not fully accepting her statements regarding her subjective symptoms. Plaintiff finds error in the ALJ (1) considering Plaintiff's improvement after the automobile accident that caused several of her impairments, (2) finding Plaintiff's reports of pain to show the pain to be well-managed with medication, (3) stating that electrodiagnostic testing was normal, (4) using conservative treatment as a reason to discount Plaintiff's statements, and (5) considering Plaintiff's ability to perform basic daily activities.

Plaintiff first argues that the ALJ erred in considering Plaintiff's improvement following her automobile accident. Plaintiff's argument is well taken. That Plaintiff's fractures may have healed or that she may have improved since the accident is not dispositive of disability, nor does it provide a reason to discount her subjective pain symptoms. "The key is not whether one has improved (although that is important),but whether [one has] improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2010). The ALJ points to no evidence suggesting that Plaintiff's pain would only be as severe as she states it to be if her injuries had not improved following the accident. Improvement from the initial trauma does not meaningfully inform the current level of Plaintiff's pain.

Next, the ALJ acknowledged that Plaintiff one time told her doctor that her medication was just taking the edge off, but the ALJ also notes that, another time, she indicated that her pain, with medication, was at 4 out of 10 and, without medication, was at 10 out of 10. The ALJ further states that "[a]lthough the claimant has reported ten out of ten pain on several occasions and the claimant was reportedly in tears secondary to pain at least once, the overwhelming majority of the record indicates the claimant does not appear to be in acute distress." (AR 51). Plaintiff testified that she has a lot of pain and has burning and stinging sensations in her feet. Plaintiff estimated that she can stand or sit for twenty minutes before needing a change of position due to pain and swelling. Plaintiff also testified that she needs to lie down throughout the day due to her tailbone. Notably, Plaintiff did not testify to being in acute distress due to pain. As the ALJ acknowledges, Plaintiff has repeatedly—though not without exception—rated her pain at 10 out of 10. This evidence supports her statement of her subjective symptoms, and the lack of appearance of acute distress does nothing to undercut that support.

Plaintiff also takes issue with the ALJ's statement that electrodiagnostic testing indicated Plaintiff's nervous system to be normal. The ALJ cited a CT scan performed on October 29, 2012 in support of this finding. Earlier in the decision, the ALJ cited to electrodiagnostic testing performed on November 27, 2012, which provides "Impression: Normal peripheral nerve integrity." (AR 468). However, the ALJ did not cite to electrodiagnosic testing performed on October 30, 2012—one day after the CT scan he cites in support of his statement of normalcy. The paperwork from the October 30, 2012 testing provides a summary that lists loss of axons in the peroneal system worse on left and acute and chronic denervation in left leg and includes an impression of acute and chronic left lumbar radiculopathy. The ALJ is not at liberty to ignore evidence that does not support his conclusions. *See Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) ("An ALJ need not mention every piece of medical evidence in [his] opinion, but [he] cannot ignore a line of evidence contrary to [his] conclusion.").

The Commissioner argues that the ALJ was only referring to upper extremity electrodiagnostic testing as normal. The beginning of the paragraph that contains this statement refers to upper extremity issues, but the end of the same paragraph discusses postural limitations. This statement is in the middle. While the ALJ may have meant to refer only to upper extremity electrodiagnostic testing, he did not expressly state so. In context, the statement does not appear to be restricted as only referring to Plaintiff's upper extremities. It may have been unknowingly done, but this statement mischaracterizes the evidence.

Additionally, Plaintiff asserts and that ALJ improperly drew a negative inference from her medical treatment, which he deemed to be conservative. Before an ALJ may draw a negative inference regarding subjective symptoms from conservative medical treatment, the ALJ must look

into the reasons for conservative treatment, such as inability to pay. SSR 96-7p, 1996 WL 374186, at *7-8. Further, While the ALJ may consider conservative treatment in assessing the severity of a condition, he should cite medical evidence regarding what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)).

Here, the ALJ stated that, after the initial hospitalization following Plaintiff's accident, most of her treatment had been conservative. The ALJ gave no indication of what treatment he would expect to see if Plaintiff's pain was as bad as she stated it to be. Further, the ALJ did not investigate reasons for conservative treatment. Though the ALJ notes that a doctor declined to intervene, (*see* AR 50 (citing AR 408)), there is no indication that the intervention was declined because the doctor did not believe Plaintiff's pain to be severe. Also, the ALJ does not state, and it is not clear to the Court, that the intervention sought was related to Plaintiff's pain. The ALJ impermissibly drew a negative inference regarding the level of Plaintiff's treatment.

The ALJ also noted that Plaintiff can manage her personal needs, prepare simple meals, do laundry and light cleaning, and drive. Plaintiff argues that this constitutes an improper basis for rejecting her statements of subjective symptoms. The Seventh Circuit Court of Appeals has noted that there are "critical differences between activities of daily living and activities in a full-time job," including "that a person has more flexibility in scheduling the former than the latter," and, in performing activities of daily living, a person "is not held to a minimum standard of performance, as she would be by an employer." *Bjornson*, 671 F.3d at 647. Further, the ALJ does not connect these daily activities to the conclusion that Plaintiff's pain cannot be as severe as she states it to be.

Considered together, the ALJ's stated reasons, which were discussed above, for his evaluation of Plaintiff's subjective symptoms are not supported by the record. This matter must be remanded for a new evaluation of these subjective symptoms.

## C. Residual Functional Capacity

Plaintiff argues that the ALJ did not properly support his finding of Plaintiff's mental and physical RFC. Plaintiff also argues that the ALJ failed to build a logical bridge between Plaintiff's restrictions and her mental RFC.

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." S.S.R. 96-8p, 1996 WL 374184 at *7.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts

to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

*1. Mental RFC*

In determining Plaintiff's mental RFC, the ALJ found that Plaintiff must be allowed to work at a flexible pace without tandem tasks. The ALJ did not tie this limitation to evidence in the record or to a medical opinion. Consequently, the ALJ did not provide enough analysis by which this Court can provide meaningful review of the appropriateness of this limitation. Moreover, the ALJ found that Plaintiff must not have "fast paced production requirements." The ALJ did not clarify at how fast of a pace Plaintiff is able to perform. The Seventh Circuit Court of Appeals has found that this undefined limitation does not adequately capture difficulties in maintaining concentration, persistence, or pace. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) (criticizing the ALJ for not defining "fast paced production"). The ALJ failed to connect his mental RFC findings to the medical evidence and to Plaintiff's restrictions.

There are additional issues that cast further doubt on the mental RFC finding. Usually, a state agency medical or psychological consultant documents the application of the special technique used in evaluating mental impairments. *See* 20 C.F.R. § 416.920a(e)(1). Here, Plaintiff sought treatment for mental health problems after the state agency consultants had reviewed Plaintiff's file, and, as a result, there is no consultant's application of the special technique in the record. Nonetheless, there is no requirement that a state agency consultant document the application of the special technique

14

in every case alleging a mental impairment. *See Burke v. Astrue*, 306 F. App'x 312, 315; 20 C.F.R. § 416.920a(e)(3).

However, the Seventh Circuit Court of Appeals has found troubling an ALJ's determination of a claimant's mental functional limitations when made without the benefit of any medical professional's assessment of the claimant's mental RFC. *Richards v. Astrue*, 370 F. App'x 727, 730 (7th Cir. 2010). In the instant matter, the Court likewise finds the ALJ's determination of Plaintiff's mental RFC troubling.

Here, the ALJ did not dismiss the state agency consultants' opinions—he gave them some weight. These opinions, however, did not document the special technique, and noted that—as of the date of the opinions—Plaintiff did not have any mental health treatment. (AR 152, 159). In assigning "some weight" to the state agency psychological experts, the ALJ found that the opinions are consistent with the record and are made by experts who have had the opportunity to review Plaintiff's medical record and are familiar with the regulations of the Social Security Administration. The ALJ also noted, however, that subsequent medical records indicate that Plaintiff has received treatment and reported depressive symptoms. The state agency consultants' opinions did not make any specific findings regarding Plaintiff's mental RFC.

Plaintiff's mental health records from treatment, which Plaintiff underwent after the agency consultants gave their opinions, include Plaintiff's reports of the following: feeling down and depressed; crying episodes; mood swings with easy irritability; feelings of hopelessness, helplessness, worthlessness, and low self esteem; decreased energy and motivation; trouble falling and staying asleep; feeling anxious around people; and passive suicidal thoughts (though no current active suicidal ideations). The ALJ did not discuss these reported symptoms in evaluating Plaintiff's

mental RFC. In light of the mental health treatment history that occurred after the agency consultants gave their opinions, the need for additional evidence about how these reported symptoms affect Plaintiff's mental RFC is apparent. On remand, the ALJ should obtain a medical professional's assessment of Plaintiff's mental RFC after evidence of Plaintiff's mental health treatment came into the record.

2.  *Physical RFC*

Plaintiff also asserts that the ALJ erred in determining her physical RFC because the ALJ did not accept the limitations suggested in any medical opinion. Plaintiff argues that the rejection of all of the suggested limitations left an evidentiary deficit regarding her RFC. However, an ALJ need not rely on a medical opinion in determining the RFC. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz*, 55 F.3d at 306 n.2). Still, the ALJ must identify the evidence that he relied upon and explain how the evidence led the ALJ to the RFC finding. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (finding error in the ALJ's failure to cite evidence that supports specific limitations in the plaintiff's RFC).

Plaintiff specifically contends that the ALJ provided no explanation regarding his findings that (1) Plaintiff did not need to be able to change her postural position throughout the work day in light of Plaintiff's status post fracture of the pelvis and coccyx and degenerative disc disease of the lumbar spine, (2) Plaintiff did not need to be able to lie down during the work day, and (3) Plaintiff could reach, hand, and finger frequently.

This case is already being remanded for new assignment of weight to a medical opinion and for new evaluation of subjective symptoms. As a result, the ALJ's findings regarding Plaintiff's

physical RFC may change dramatically when revisited. In the interest of judicial economy, the Court will not determine whether any error requiring remand exists in the above-noted findings.

**CONCLUSION**

For these reasons, the Court **GRANTS** the relief sought in the Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 27th day of February, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT
